# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

MICHAEL T. HIBBARD,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:16-cv-710
Black, J.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Michael Hibbard brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the Court on plaintiff's statement of errors (Doc. 7), the Commissioner's response in opposition (Doc. 12), and plaintiff's reply memorandum (Doc. 13).

## I. Procedural Background

Plaintiff filed his applications for DIB and SSI in October 2012, alleging disability since January 1, 2007 due to anxiety, panic attacks, obsessive compulsive disorder, schizophrenia, hallucinations, and depression. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* video hearing before administrative law judge ("ALJ") Frederick Andreas. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing. On December 16, 2014, the ALJ issued a decision denying plaintiff's applications. Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform

the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since October 1, 2012, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: panic disorder without agoraphobia and mood disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, I find that the [plaintiff] has the residual functional capacity [("RFC")] to perform a full range of work at all exertional levels but with the following nonexertional limitations: the [plaintiff] can understand and remember 2-3 step task instructions meaning SVP1 to SVP2 skill [level] jobs; he is best suited for an environment with routine duties with no fast pace production quotas; he can adapt to work settings in which duties are routine and predictable meaning duties do not change, such as putting parts in a sleeve; his job duties cannot involve interaction with the public[;] interaction with co-workers and supervisors is superficial and brief meaning no arbitration, negotiation or conflict resolution, no management duties, and no responsibility for the health, safety and welfare of others.
>
> 6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

---

[1] Plaintiff's past relevant work was as a hand packager, a medium, unskilled position; and a finisher, a medium position. (Tr. 18, 53-54).

7. The [plaintiff] was born [in] 1971 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from October 1, 2012, the amended alleged onset date, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-20).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

---

[2] The ALJ relied on the VE's testimony to find that plaintiff is able to perform representative medium jobs such as kitchen helper (10,000 jobs statewide; 200,000 jobs nationally) and car washer (2,000 jobs statewide; 100,000 jobs nationally), along with a representative light job such as merchandise marker (9,000 jobs statewide; 250,000 jobs nationally). (Tr. 19, 55-56).

4

(1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Error**

On appeal, plaintiff raises a single issue: whether the ALJ erred by failing to accept the limitations set forth by consultative psychological examiner Nicole Leisgang, Psy.D., even though the ALJ assigned significant weight to her opinion. (Doc. 7 at 1). Plaintiff argues the ALJ should have found that plaintiff meets the criteria for anxiety related disorders under Listing 12.06 because Dr. Leisgang assigned plaintiff a GAF score of 50[3] and her findings were consistent with marked restrictions in social functioning and the ability to maintain concentration, persistence, and pace. (*Id.* at 4). Plaintiff contends that the RFC the ALJ adopted

---

[3] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. Individuals with GAF scores of 41 to 50 have "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.*

5

does not adequately account for Dr. Leisgang's opinion "concerning [plaintiff's] easy distractibility, task persistence, and feeling easily overwhelmed with *frequent* panic attacks." (*Id.* at 5) (emphasis in original).

*1. The ALJ properly assessed Dr. Leisgang's opinion in relation to Listing 12.06.*

Listing 12.06 may be satisfied if there is medical evidence of "[r]ecurrent severe panic attacks . . . at least once a week" that results in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(A)(3), (B).

The ALJ determined that plaintiff's condition did not meet or medically equal Listing 12.06 because he had no episodes of decompensation and had only mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 14-15). As to social functioning, the ALJ noted that plaintiff maintains relationships with his sister, mother, sons, girlfriend, and a "good friend in Kentucky." (Tr. 14). The ALJ found that plaintiff is able to communicate effectively and while he alleges difficulties with comprehension, Dr. Leisgang "observed none that would limit his ability to interact with others." (*Id.*). The ALJ also cited Dr. Leisgang's opinion in finding that while plaintiff struggles to trust and interact with others outside of his family, "he is able to leave the home and interact with medical professionals despite signs of anxiety," which "demonstrates that any difficulties in social functioning are neither marked nor extreme." (*Id.*).

As to concentration, persistence, and pace, the ALJ found that while plaintiff's anxiety results in "some difficulty," plaintiff "maintains adequate short-term memory, and is able to

6

perform simple arithmetic." (Tr. 15). Further, the ALJ found that "[a]lthough [plaintiff] is sensitive to stress, his ability to sustain concentration during the consultative examination and the hearing demonstrates that any limitations are neither marked nor extreme." (*Id.*).

As to Dr. Leisgang's opinion, the ALJ gave it significant weight. (Tr. 17). The ALJ summarized Dr. Leisgang's opinion as follows: "[Dr. Leisgang] indicates [plaintiff] has moderate limitations in functioning with a GAF of 50 and could become overwhelmed in stressful situations, however, he was able to converse appropriately, he could follow conversationally, he could perform simple calculations." (*Id.*). The ALJ found Dr. Leisgang's observations to be "consistent with the treatment records, which demonstrate [plaintiff] is able to leave the home independently, he is able to maintain close relationships, and he is able to communicate effectively despite anxiety and stress." (*Id.*). The ALJ also stated that "[plaintiff] acknowledges donating plasma, collecting scrap metal, and maintaining a fitness regimen, which is consistent with an individual with no more than moderate limitations." (*Id.*).

The record shows that Dr. Leisgang examined plaintiff for disability purposes in December 2012. (Tr. 293-99). Plaintiff reported "that he has been with his current girlfriend for seven months and gets along well with her." (Tr. 294). He reported that he also gets along well with his two sons but has only limited contact with them. (*Id.*). Plaintiff reported that when he was in school, "he got along well with classmates but preferred just a small group of friends." (*Id.*). He reported that when he was working he was "at times irritated with coworkers or supervisors but stated that 'I bite my tongue and go on.'" (Tr. 295). Plaintiff endorsed panic attacks three to four times per week. (*Id.*). He also endorsed "sad mood, anhedonia, easy distractibility, and feelings of hopelessness and helplessness." (*Id.*). Further, plaintiff reported that he has difficulty trusting others. (*Id.*).

7

Concerning activities of daily living, plaintiff reported that he lives with his sister, girlfriend, and mother. (*Id.*). Plaintiff stated that he works occasionally through temporary service agencies, donates blood plasma, and receives food stamps. He stated that he attends to grooming and hygiene, performs household chores, shops for groceries, manages his finances and paperwork, listens to music, and occasionally reads or works on the computer. Plaintiff has regular contact with his family but stated that he does not often socialize beyond his family because "I don't trust nobody." (*Id.*). However, he stated that he met his girlfriend "through a friend." (*Id.*).

On mental status examination, Dr. Leisgang noted that plaintiff was a "cooperative man with whom rapport was adequately established." (*Id.*). He "appeared to be anxious but displayed no other eccentricities of manner." (Tr. 296). Plaintiff "appeared to be adequately motivated, although his task persistence appeared to be adversely affected by his anxious mood." (*Id.*). Dr. Leisgang noted that plaintiff's "statement that he has difficulty trusting others suggests that he may be at times suspicious of others, perhaps misinterpreting the behavior and statements of those around him." (*Id.*). Dr. Leisgang observed signs that plaintiff "appeared to be rather anxious as he displayed noticeable facial flushing, bounced his leg, maintained variable eye contact, and tended to ramble in conversation." (*Id.*). Plaintiff's "remote recall was adequate and his short-term memory skills were adequate as he could recall six digits forward and five digits backward." (*Id.*). Dr. Leisgang found that plaintiff's "attention and concentration skills were somewhat limited" and he appeared "to be easily distracted during the interview session." (*Id.*).

Dr. Leisgang diagnosed a panic disorder without agoraphobia and assigned a GAF score of "50 (Current) Serious Symptomatology." (Tr. 297). Concerning plaintiff's ability to understand, remember, and carry out instructions, Dr. Leisgang stated:

> [Plaintiff] was able to converse appropriately with the examiner and respond to direct questions. However, he tended to ramble in conversation which may interfere with his ability to appropriately ask for assistance. His phraseology and description of his background suggest that he is of low average intelligence. He was able to recall six digits forward and five digits backward. Nonetheless, he did note that he has had difficulty comprehending instructions in the past.

(Tr. 298). Concerning plaintiff's ability to maintain attention, concentration, persistence, and pace, Dr. Leisgang stated:

> [Plaintiff] was able to follow conversationally but did appear to be easily distracted. He was adequately motivated although his task persistence appeared to be adversely affected by his anxiety. He was not able to calculate serial sevens but did calculate serial threes. It is likely that his increased anxiety may result in a corresponding decrease in his attention, concentration, and task persistence.

(*Id.*). Concerning plaintiff's ability to respond appropriately to supervision and to coworkers in a work setting, Dr. Leisgang stated:

> [Plaintiff] was cooperative with this examiner but did appear to be considerably anxious and even uncomfortable. He gets along well with his family and girlfriend but stated that he has no friends. He reported frequent panic attacks. He reported no past significant difficulty relating appropriately to coworkers or supervisors.

(*Id.*). Concerning plaintiff's ability to respond appropriately to work pressures, Dr. Leisgang stated:

> [Plaintiff] appeared to be rather anxious during this evaluation. He reported a long history of anxiety and panic-like episodes. He also reported a history of depression although he denied current depressed symptomatology. As the stress increases, he may experience an increase in anxiety, discomfort with others, and panic-like symptoms. He appeared to be easily overwhelmed during this relatively non-threatening interview and may have difficulty responding appropriately to more stressful situations.

(*Id.*).

9

Based on this record, the ALJ properly considered Dr. Leisgang's opinion in assessing whether plaintiff's condition meets or medically equals Listing 12.06. Plaintiff argues that Dr. Leisgang's findings "are indicative of marked restrictions" in plaintiff's social functioning and ability to maintain concentration, persistence, and pace. (Doc. 7 at 4). An impairment is "marked" when it is "more than moderate but less than extreme." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*

Relying on Dr. Leisgang's opinion, the ALJ determined that plaintiff's difficulties in social functioning were only moderate because he was able to interact with his sons, sister, mother, girlfriend, and a good friend in Kentucky. (Tr. 14, 294-95). The ALJ accurately noted Dr. Leisgang's finding that plaintiff was able to communicate effectively. (Tr. 14, 298). The ALJ also reasonably noted that although plaintiff alleged difficulties in comprehension, Dr. Leisgang did not observe any such difficulties during the interview "that would limit his ability to interact with others." (Tr. 14; *see also* Tr. 293-98). Thus, the ALJ's finding that plaintiff had only moderate difficulties in social functioning was one reasonable interpretation of Dr. Leisgang's opinion. *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). *See also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

As to concentration, persistence, and pace, the ALJ noted Dr. Leisgang's finding that plaintiff had some difficulty in attention and concentration, but the ALJ concluded that this translated to only moderate difficulties. (*See* Tr. 15, 296). The ALJ accurately noted Dr. Leisgang's finding that plaintiff's short-term memory was adequate. (*Id.*). Relying on plaintiff's "ability to sustain concentration during the consultative examination and the hearing," the ALJ concluded that his difficulties in this area were neither marked nor extreme. (Tr. 15). Again, this was one reasonable interpretation of the evidence. *See Buxton*, 246 F.3d at 772; *Her*, 203 F.3d at 389-90.

Plaintiff argues that "Dr. Leisgang never expressly opined moderate restrictions in any area" and "her [statements] concerning [plaintiff's] social functioning and ability to maintain concentration, persistence, and pace are indicative of marked restrictions." (Doc. 7 at 4). However, Dr. Leisgang did not expressly find that plaintiff had marked restrictions in either of these areas of functioning. (*See* Tr. 298). In fact, she did not provide any specific findings using the terminology of the Social Security regulations as to the seriousness of plaintiff's restrictions in any of the functional areas. (*See id.*). Moreover, when assessing whether plaintiff met or equaled Listing 12.06, the state agency psychologists, who reviewed Dr. Leisgang's report as well as the other evidence of record, opined that plaintiff had only "moderate" difficulties in maintaining social functioning and concentration, persistence, or pace. (Tr. 74, 85, 97, 107). These opinions further support the ALJ's finding of "moderate" limitations in these areas of functioning. Additionally, none of plaintiff's treating sources opined that he was more than moderately limited in his ability to maintain social functioning or concentration, persistence, or pace.

While plaintiff is correct that Dr. Leisgang assessed a GAF score of 50, which is on the cusp between serious (GAF 41-50) and moderate (GAF 51-60) symptomatology, a finding of *serious* symptomatology in the parlance of the DSM-IV does not necessarily translate to *marked* limitations of the specific functional areas at issue in the parlance of the Social Security regulations. Accordingly, Dr. Leisgang's opinion (to which the ALJ gave significant weight) does not require a finding of marked restrictions in social functioning or the ability to maintain concentration, persistence, or pace. Further, as described above, the ALJ's interpretation of the evidence, including Dr. Leisgang's opinion, to find that plaintiff did not have the marked restrictions in functioning necessary to satisfy the requirements of Listing 12.06 was reasonable and supported by substantial evidence.

*2. The ALJ properly assessed Dr. Leisgang's opinion in determining plaintiff's RFC.*

Plaintiff also argues that the ALJ's RFC determination disregarded Dr. Leisgang's opinion "concerning [plaintiff's] easy distractibility, task persistence, and feeling easily overwhelmed with *frequent* panic attacks." (Doc. 7 at 5) (emphasis in original).

As already noted above, Dr. Leisgang found that plaintiff was "easily distracted during the interview session" and his "task persistence appeared to be adversely affected by his anxious mood." (Tr. 296). Further, Dr. Leisgang noted that plaintiff reported experiencing panic attacks three or four times a week. (Tr. 295).

The ALJ's RFC determination accounted for Dr. Leisgang's finding that plaintiff has problems with distractibility and task persistence by limiting plaintiff to "routine duties with no fast pace production quotas . . . in which duties are routine and predictable meaning duties do not change." (Tr. 15). *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016) (rejecting plaintiff's argument that ALJ's hypothetical limiting plaintiff to simple, unskilled work

12

in a low stress job was insufficient to convey moderate limitations in concentration, persistence, and pace); *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 (6th Cir. 2014) ("[T]he limitation to simple, routine, and repetitive tasks adequately conveys [plaintiff's] moderately limited ability 'to maintain attention and concentration for extended periods.'"). This is also consistent with the state agency consultants' opinions about plaintiff's RFC. (Tr. 76, 87, 99, 109).

As to plaintiff's panic attacks, Dr. Leisgang noted plaintiff's self-report that he experiences such attacks three or four times a week, but she did not make any independent finding concerning the frequency of plaintiff's attacks. (*See* Tr. 295, 298). In describing potential limitations resulting from plaintiff's panic attacks, Dr. Leisgang did not make specific recommendations but opined only that plaintiff "may have difficulty responding appropriately to more stressful situations" due to his anxiety and panic disorder. (Tr. 298). The ALJ's RFC determination accounted for Dr. Leisgang's opinion by limiting plaintiff to: (1) "routine duties with no fast pace production quotas" in which duties do not change; (2) no interaction with the public; and (3) only "superficial and brief" interaction with coworkers and supervisors, "meaning no arbitration, negotiation or conflict resolution, no management duties, and no responsibility for the health, safety and welfare of others." (Tr. 15). *See Koster v. Comm'r of Soc. Sec.*, 643 F. App'x 466, 477 (6th Cir. 2016) (noting that ALJ's RFC determination limited plaintiff to "low stress work meaning no arbitration, negotiation, confrontation, responsibility for the safety of others, and no supervisory responsibility"); *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 382 (6th Cir. 2013) (noting that ALJ's RFC determination defined "low stress" as "low production quotas, which also includes no high production pace"); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 280 (6th Cir. 2009) (noting that ALJ's RFC determination defined "low stress" as

a work environment where there is "no work with the general public or in close contact with co-workers").

Based on the foregoing, the ALJ's RFC determination properly accounted for the limitations identified in Dr. Leisgang's report concerning distractibility, task persistence, and workplace stress. Accordingly, plaintiff's assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT**:

The decision of the Commissioner be **AFFIRMED**.

Date: 6/26/17

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

MICHAEL T. HIBBARD,  
    Plaintiff,

vs.

COMMISSIONER OF  
SOCIAL SECURITY,  
    Defendant.

Case No. 1:16-cv-710  
Black, J.  
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).